# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY BRASS, Jr., CDCR #G-05645<br><br>Plaintiff,<br><br>v.<br><br>W.L. MONTGOMERY, Warden; MARIO DE LA TORRE, Correctional Officer; LT. FAVELA; A. CANEDO,<br><br>Defendant. | Case No. 22-cv-1466-BAS-MSB<br><br>**ORDER:**<br><br>**(1) GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS (ECF No. 7);**<br><br>**(2) DISMISSING CLAIMS AGAINST DEFENDANTS MONTGOMERY, FAVELA, AND CANEDA FOR FAILURE TO STATE A CLAIM UNDER 28 U.S.C. §§ 1915(e)(2) & 1915A; and**<br><br>**(3) GRANTING PLAINTIFF LEAVE TO AMEND** |

While he was incarcerated at Corcoran State Prison, Plaintiff Gary Brass, Jr. ("Brass" or "Plaintiff") filed the instant civil rights action pursuant to 42 U.S.C. § 1983 in

the Eastern District of California.[1] (*See* Compl., ECF No. 1.) Brass claims a correctional officer violated his constitutional rights in April 2022, when he was housed at Calipatria State Prison ("CAL"). (*Id.* at p. 3–4.) On September 28, 2022, United States Magistrate Judge Gary S. Austin, Eastern District of California, found the events underlying Brass' action arose in Imperial County, which is located in the Southern District of California, and, therefore, transferred this matter to this Court. (*See* ECF No. 2.)

Plaintiff did not pay the $402 civil and administrative filing fee required by 28 U.S.C. § 1914(a) at the time he filed his Complaint. Instead, he applied to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (IFP App., ECF No. 7.)

**I.      IFP Application**

A party who institutes a civil action, suit, or proceeding in a district court of the United States, except for an application for a writ of habeas corpus, must pay a filing fee of $402.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in increments or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless of whether his action is ultimately dismissed, *see* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires a prisoner who seeks to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C.

---

[1] On November 7, 2022, Brass filed a Notice of Change of Address, in which he represents he was transferred to Salinas Valley State Prison ("SVSP") in Soledad, California. (*See* Notice, ECF No. 6.)

[2] In addition to the $350 statutory fee, civil litigants must pay an administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

§ 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1), (b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the prisoner's account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

Under 28 U.S.C. § 1915, indigency is the benchmark for whether a plaintiff qualifies for IFP status. The determination of indigency falls within the district court's sound discretion. *Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991) (holding that "[s]ection 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement on indigency"), *rev'd on other grounds*, 506 U.S. 194 (1993). It is well-settled that a party need not be completely destitute to proceed IFP. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948). To satisfy the requirements of 28 U.S.C. § 1915(a), "an affidavit [of poverty] is sufficient which states that one cannot because of his poverty pay or give security for costs . . . and still be able to provide himself and the dependents with the necessities of life." *Id.* at 339. However, "the same even-handed care must be employed to assure that federal funds are not squandered to underwrite, at public expense . . . the remonstrances of a suitor who is financially able, in whole or in part, to pull his own oar." *Temple v. Ellerthorpe*, 586 F. Supp. 848, 850 (D.R.I. 1984).

In support of his IFP Application, Brass submits a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Trust Account Statement Report, as well as a Prison Certificate completed by an accounting officer at SVSP. (*See* IFP App. at 4–8.) Brass' Trust Account Statement Report shows he maintained an average monthly balance of $777.64 and had average monthly deposits of $777.64 credited to his account at

SVSP over the 6-month period immediately preceding the filing of his Complaint. His available balance at the time of filing was $777.64.

Brass has made a satisfactory showing of indigency for the purpose of 28 U.S.C. § 1915(a). Therefore, the Court **GRANTS** Brass' IFP Application and (ECF No. 7) and assesses an initial partial filing fee of $155.53 pursuant to 28 U.S.C. § 1915(b)(1). However, this initial fee need be collected only if sufficient funds are available in Brass' account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered"). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of Brass and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(1).

## II.   SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)

### A.   Standard of Review

Because Brass is a prisoner and is proceeding IFP, his Complaint requires a preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must review and *sua sponte* dismiss an IFP complaint, and any complaint filed by a prisoner seeking redress from a governmental entity, or officer or employee of a governmental entity, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir.

2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure [("Rule")] 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed-me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

**B.    Allegations in the Complaint**[3]

Brass alleges that on April 21, 2022—at which time he was housed in CAL—Defendant Mario De La Torre, a correctional officer, performed a body search on him. (Compl. at p. 3.) Brass avers De La Torre "fondled" and "inappropriately touched him" (*Id.* at pp. 3, 5.) Brass told De La Torre that the search was "making [him] feel uncomfortable." (*Id.* at p. 3.) Brass claims De La Torre became "frustrated" and, "without

---

[3] These allegations all are taken from the Complaint. (ECF No. 1.) For the purpose of this pre-answer screen, the Court accepts as true all of Brass' factual allegations. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

warning[,] grabbed [Brass'] right hand causing [it to] fracture." (*Id.*) De La Torre then forcibly bent Brass' entire arm behind his back, "causing severe pain." (*Id.*) Brass "broke free from the hold" and ran toward the showers, but De La Torre grabbed Brass by the shirt and pushed him into the shower door, allegedly causing Brass to suffer a concussion. (*Id.*)

The following day, Brass filed a grievance against De La Torre, alleging excessive force. (Compl. at p. 4.) He also separately filed a complaint against De La Torre pursuant to the Prison Rape Elimination Act. (*Id.*) Shortly thereafter, De La Torre initiated prison disciplinary charges against Brass for "battery with [serious bodily injury]" arising out of their April 21, 2022 altercation. (*Id.* at p. 6.) Brass claims the charge was retaliatory, in retribution for the grievances Brass filed. (*Id.*) Brass appears to allege the charge ultimately was dropped at a hearing. (*Id.* at p. 4.)

Brass seeks unspecified compensation for his physical injuries, along with his "emotional and mental suffering." (Compl. at p. 6.) In addition, he seeks unspecified punitive damages. (*Id.*)

### C.  42 U.S.C. § 1983

Brass brings the instant action under 42 U.S.C. § 1983 ("Section 1983). "Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

//
//
//

### D. Analysis

#### 1. Defendant De La Torre

The Court finds the Complaint contains adequate facts to support the elements of a cognizable First Amendment retaliation claim and an Eighth Amendment excessive force claim against De La Torre, and that those claims are sufficiently robust to survive the "low threshold" set for *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b); *see Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

<u>First Amendment Claim</u>: "Within the prison context, a viable claim for First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). A First Amendment violation may lie even when the misconduct identified in a prisoner's grievance does not rise to the level of a constitutional violation itself. *See Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989). "Purely retaliatory actions taken against a prisoner" for having filed or raised a grievance against a correctional officer are paradigmatic of the sorts of factual scenarios out of which viable First Amendment retaliation claims arise. *Garcia v. Smith*, No. 10cv1187 AJB (RBB), 2013 WL 12108668, at *4 (S.D. Cal. Aug. 21, 2013); *cf. Sherman v. Aguilar*, No. 10-0290 IEG (PQR), 2012 WL 1107752, at *3 (S.D. Cal. Apr. 2, 2012); *Gonzalez v. Doe*, No. 07-cv-1962-W (PQR), 2010 WL 371881, at *7 (S.D. Cal. July 28, 2010).

The Complaint contains a sufficient factual foundation for Brass's First Amendment retaliation claim against De La Torre. Brass alleges he filed grievances with CAL accusing De La Torre of touching him inappropriately during a body search and that, when Brass voiced his discomfort, De La Torre responded by using excessive force to subdue Brass, injuring him in the process. Brass avers that, because he did so, De La Torre fabricated a battery charge against him, stemming from the altercation between the two. Ultimately,

the charge against Brass was dismissed at a hearing. These allegations suffice to support Brass' First Amendment retaliation claim at this juncture.

Notably, the Court finds the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994) is inapposite here. In *Heck*, the Supreme Court held that a Section 1983 claim cannot proceed when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his sentence or conviction. 512 U.S. at 486–87. This doctrine—frequently referred to as the *Heck* bar—applies to First Amendment retaliation claims. *See Moschref v. Stratton*, 697 F. App'x 532, 533 (9th Cir. 2017); *Vohra v. City of Placentia*, 683 F. App'x 564, 566–67 (9th Cir. 2017); *Smith v. Ball*, 278 F. App'x 739, 741 (9th Cir. 2008). It is also well-settled the *Heck* bar applies in to "internal prison proceedings." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005). However, as the Ninth Circuit recently opined, "[t]he *Heck* bar . . . requires an actual judgment or conviction." *Duarte v. City of Stockton*, 60 F.4th 566, 571–72 (9th Cir. 2023). Because Brass appears to allege the retaliatory disciplinary charge pressed against him subsequently was dismissed at a hearing, the *Heck* bar does not seem to apply to Brass' First Amendment claim.

Eighth Amendment Claim: To survive a pre-answer screen pursuant to 28 U.S.C. § 1915, a plaintiff seeking to press an Eighth Amendment based upon a prison official's use of excessive force, a plaintiff must allege "the unnecessary and wanton infliction of pain[.]" *Whitley v. Abers*, 475 U.S. 312, 320 (1986). This requires alleging "overt acts with some degree of particularity such that his claim is set forth clearly enough to give defendants fair notice of the type of claim being pursued." *Ortexz v. Wash. Cnty*, 88 F.3d 804, 810 (9th Cir. 1996) (citing *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984)). "A prison official may be liable for failure to protect an inmate from a use of excessive force if he is deliberately indifferent to a substantial risk of serious harm to an inmate." *Estate of Davis v. Delo*, 115 F.3d 1388, 1395 (8th Cir. 1997); *see also Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000).

Physical sexual assault also violates the Eighth Amendment. *See Schwenk v. Hartford*, 204 F.3d 1187, 1196–97 (9th Cir. 2000); *Austin v. Terhune*, 367 F.3d 1167,

1171–72 (9th Cir. 2004) ("[P]risoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards[.]" (quoting *Schwenk*, 367 F.3d at 1197)); *accord Women Prisoners of the Dist. of Columbia Dep't of Corr. v. District of Columbia*, 877 F. Supp. 634, 665 (D.D.C. 1994) ("[U]nsolicited touching of . . . prisoners' [genitalia] by prison employees are 'simply not part of the penalty that criminal offenders pay for their offenses against society'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))), *aff'd in part and vacated in part*, 93 F.3d 910 (D.C. Cir. 1996). In evaluating a prisoner's Eighth Amendment claim based upon sexual harassment or abuse, the Ninth Circuit has instructed district courts to "consider whether 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012) (quoting *Hudson v. McMillan*, 503 U.S. 1, 8 (1992)).

The Complaint contains enough facts to support two variants of an Eighth Amendment claim. Brass sufficiently pleads De La Torre's use of excessive force where he alleges De La Torre fractured Brass' arm and tackled him to the ground, causing a concussion. *Cf. Epps v. CSP Sacramento*, No. 2:14-cv-1347 MCE AC P, 2016 WL 232327, at *6 (E.D. Cal. Jan. 19, 2016) (finding roughly similar allegations "state[d] a potentially cognizable Eighth Amendment claim[] for excessive force").

Furthermore, Brass has sufficiently alleged an Eighth Amendment claim based upon sexual assault. It is true the Ninth Circuit has consistently held that Eighth Amendment claims premised upon allegations of brief inappropriate touching with sexual overtones do not rise to the level of objective harmfulness needed for a cognizable constitutional violation. *See, e.g.*, *Watison v. Carter*, 688 F.3d 1108, 1112–14 (9th Cir. 2012) (finding defendant's conduct "not objectively harmful enough" and prisoner's humiliation not severe enough to state an Eighth Amendment claim where defendant officer allegedly entered prisoner's cell while he was on the toilet, rubbed his thigh against the prisoner's thigh and began smiling in a sexual way, and left prisoner's cell laughing). But the Complaint plausibly alleges wrongdoing on the part of De La Torre—his fondling and

inappropriate touching of Brass during a body search—that is objectively harmful, such that it would be premature at this juncture to dismiss strand of Brass' Eighth Amendment claim.

### 2. Remaining Defendants

"To state a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law." *Campbell v. Wash. Dep't of Soc. Servs.*, 671 F.3d 837, 842 n.5 (9th Cir. 2011) (citing *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987)). To prove this second element, a plaintiff must allege an "affirmative link between the occurrence" of the constitutional violations identified in the pleading and the prison officials who are purportedly responsible for those deprivations. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986); *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim.").

The Complaint does not contain any factual nexus connecting Warden W.L. Montgomery, Lieutenant Favela, and Lieutenant Canedo, all of whom Brass names as Defendants, to Brass' alleged First and Eight Amendment violations. Thus, as to these Defendants, the Complaint both fails to pass muster of the minimal pleading requirements of Rule 8, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Mere generalizations as to any particular defendant—or even defendants as a group—are insufficient"), and fails to state a cognizable claim under Section 1983, *see Iqbal*, 556 U.S. at 676 (holding Section 1983 requires a plaintiff to demonstrate the personal involvement of each defendant).

Moreover, to the extent Brass seeks to hold these Defendants liable for the actions of their subordinates, he has not adequately alleged such a claim. Generally speaking,

supervisory personnel are not liable under Section 1983 for the actions of their employers. *See Iqbal*, 556 U.S. at 676; *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). When a named defendant holds a supervisory position, the causal link between him or her and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To do so, a plaintiff must allege facts indicating that the supervisory defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Again, because the Complaint is bereft of allegations that illustrate how Montgomery, Favela, or Canedo are involved in Brass' constitutional deprivations, Brass fails to allege facts supporting any of these three theories of supervisory liability as to those Defendants. Thus, the claims alleged Montgomery, Favela, and Canedo do not withstand this Court's pre-answer screen. See *Iqbal*, 556 U.S. at 678; 28 U.S.C. § 1915(e)(2)(B)(ii); *Watison*, 668 F.3d at 1112.

Accordingly, this action is **DISMISSED WITHOUT PREJUDICE** as to Defendants Montgomery, Favela, and Canedo

\* \* \* \*

While the Court finds Brass' claims against De La Torre are sufficient to survive the pre-answer screening standard, he is cautioned that "the *sua sponte* screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

### III. CONCLUSION

Based on the foregoing, the Court:

(1) **GRANTS** Plaintiff's application to proceed IFP pursuant to 28 U.S.C. § 1915(a). (ECF No. 7.)

(2) **ORDERS** the Secretary of the CDCR, or their designee, to collect from Plaintiff's prison trust account the $155.53 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and to forward the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2)  ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

(3) **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

(4) **DISMISSES WITHOUT PREJUDICE** all claims against Montgomery, Favela, and Canedo based on Plaintiff's failure to state a plausible claim for relief against any of them pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1)

(5) **GRANTS** Plaintiff leave to either:  (1) file a Notice of Intent to proceed with only his First and Eighth Amendment claims against De La Torre, or (2) file an Amended Complaint correcting all the deficiencies identified by the Court in this Order.  Plaintiff must file either a Notice of Intent or an Amended Complaint **by no later than April 24, 2023**.

If Plaintiff choses to proceed with only claims against De La Torre, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on De La Torre and dismissing the remaining claims against the remaining defendants.

If Plaintiff chooses to file an amended pleading correcting the deficiencies outlined in this Order, his Amended Complaint must be complete in itself without reference to his original pleading.  Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived.  *Se* Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.,* 693 F.3d 896, 928 (9th Cir. 2012) (noting claims dismissed with leave to amend that are not re-alleged in an amended

pleading may be considered "waived if not repled").  Plaintiff's Amended Complaint must be entitled, "First Amended Complaint, contain "S.D. Cal. Civil Case No. 22-cv-1466" in its caption, and comply both with Federal Rule of Civil Procedure 8 and with Local Rule 8.2(a).

(6) In order to assist Plaintiff in complying with these requirements, the Court further **DIRECTS** the Clerk of the Court to provide Plaintiff with (1) a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 and (2) a copy of his Complaint (ECF No. 1) for his use and convenience should he choose to amend.

**IT IS SO ORDERED.**

**DATED: March 10, 2023**

Hon. Cynthia Bashant
United States District Judge